# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CLEOPATRA OMORODION & IHUARULAM C. OKOROJI, individually and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>MAXIM HEALTHCARE SERVICES, INC., 7227 Lee Deforest Dr. Columbia, MD 21046,<br><br>    Defendant. | **Civil Action No.** _____ |

## NOTICE OF REMOVAL

PLEASE TAKE NOTICE that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Maxim Healthcare Services, Inc. ("Maxim" or "Defendant") hereby effects the removal of the above-captioned action from the Philadelphia Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania. This Court possesses original subject matter jurisdiction over this lawsuit under the Class Action Fairness Act of 2005 ("CAFA"), which grants federal district courts original jurisdiction over civil class actions filed under federal or state law in which any member of a class of potential plaintiffs is a citizen of a state different from any defendant, and where the alleged amount in controversy for the putative class members in the aggregate exceeds $5 million, exclusive of interest and costs. As set forth herein, this case satisfies all of CAFA's jurisdictional requirements and is timely and properly removed to this Court through the filing of this Notice.

I.     **SUMMARY OF COMPLAINT**

1. On or about January 9, 2017, Plaintiffs Cleopatra Omorodion ("Omorodion") and Ihuarulam C. Okoroji ("Okoroji") (together, "Plaintiffs") commenced this action against Defendant by filing a Complaint in the Philadelphia Court of Common Pleas. Plaintiffs sent a copy of the Complaint to Maxim's corporate headquarters by certified mail on or about January 16, 2017. A copy of the Complaint is attached hereto as Exhibit A.

2. By way of their two-count Complaint, Plaintiffs seek relief for violations of the Pennsylvania Minimum Wage Act ("PMWA") (Count I), (Compl. ¶¶ 35-41), and the Pennsylvania Wage Payment and Collection Law ("PWPCL") (Count II), (*Id.* ¶¶ 42-50).

3. Plaintiffs Omorodion and Okoroji—who worked for Defendant as a Licensed Practical Nurse and a Registered Nurse, respectively—allege that they regularly worked "off the clock" hours without compensation. (*See id.* ¶ 14 ("Plaintiffs bring this claim against Defendant for its failure to properly compensate Plaintiffs and similarly situated Nurses for their total time worked and for time logged in excess of 40 hours per week.")) Plaintiffs' purported "off the clock" work includes the following alleged conduct:

- Reviewing patients' medical histories, including prescribed drugs and treatment, which are presented in a "many-paged" email attachment that each nurse must review from his or her home. (*Id.* ¶15.)
- Performing research into any drug or treatment that a nurse is unfamiliar with. (*Id.* ¶ 16.)
- Other pre-shift work, such as "review[ing] summaries about a patient's attitude and idiosyncrasies, the patient's family details, and other pertinent information regarding the patient and the relevant household." (*Id.* ¶ 17.)
- Coordinating care, making doctor's appointments, and following up on medication orders. (*Id.* ¶ 18.)
- Driving to the Defendant's offices prior to starting a shift to pick up medical supplies. (*Id.* ¶¶ 19-20.)
- Providing or receiving a detailed report from another caregiver during each shift change, which takes an average of fifteen minutes per shift. (*Id.* ¶¶ 23-25.)

- Traveling to Defendant's offices at the end of each week to drop off their paperwork.  (*Id.* ¶ 26.)

4. Plaintiffs seek to pursue their claims on a class-wide basis, on behalf of all "current and former employees of Maxim Home Health Care, Inc. who worked in the Commonwealth of Pennsylvania during the applicable limitations period as hourly paid Home Health Care Nurses."  (*Id.* ¶ 27.)  According to the Complaint, Defendant employs "thousands of similarly situated Nurses, as well as other types of employees, including therapists, home health aides, medical social workers and other health care professionals."  (*Id.* ¶ 8.)

5. Regarding the types of employees included in the putative class, the "Home Health Care Nurses" referenced in Plaintiffs' Complaint include homecare Licensed Practical Nurses ("LPNs") and homecare Registered Nurses ("RNs").  Defendant bases this on the fact that Plaintiff Omorodion was an LPN and Plaintiff Okoroji was an RN.  (*See* Exhibit B, Declaration of Lindy Budash in Support of Notice of Removal ("Budash Decl.") ¶ 6.)  For the sake of clarity in regard to the allegations in Plaintiffs' Complaint, and for purposes of this Notice of Removal only, Defendant will use the term "nurses" to describe the putative class.

6. Plaintiffs' Complaint seeks significant relief under both the PMWA and the PWPCL.  (*Id.*, Prayer for Relief.)  Under the PMWA, Plaintiffs seek damages "in the amount of unpaid overtime compensation, including interest thereon, and penalties subject to proof"; together with an award of attorneys' fees and costs.  (*Id.*)  Under the PWPCL, Plaintiffs seek "damages for the amount of unpaid wages, including unpaid overtime, in addition to interest and penalties subject to proof"; liquidated damages "in an amount equal to twenty-five percent of the total amount of wages due, or $500, whichever is greater"; and attorneys' fees and costs.  (*Id.*)  Elsewhere in their Prayer for Relief, Plaintiffs seek injunctive relief, in addition to "unpaid regular and overtime wages," "liquidated damages, interest, and monetary penalties," and

"litigation costs, expenses, and attorneys' fees." (*Id.*) Nowhere in their Complaint, however, do Plaintiffs plead a specific amount alleged to be in controversy. (*See generally id.*)

7. Submitted herewith as Exhibit C, Defendant has appended a copy of all process, pleadings, and orders that were served on Defendant or filed by Defendant while this case was pending in state court. *See* 28 U.S.C. § 1446(a).

## II. VENUE

8. This case was originally filed in the Philadelphia Court of Common Pleas. Accordingly, venue of this matter is proper in the U.S. District Court for the Eastern District of Pennsylvania. *See* 28 U.S.C. §§ 118(a), 1441(a).

## III. TIMELINESS OF REMOVAL

9. On or about January 16, 2017, Plaintiffs sent a copy of their Complaint to Maxim's corporate headquarters by certified mail. Because this Notice of Removal is filed within thirty (30) days of Defendant's receipt of the Complaint by certified mail, removal is timely under 28 U.S.C. §§ 1446(b) and 1453. *See Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 354 (1999) (holding that 30-day removal period begins to run upon service of the summons and complaint); *see also Farina v. Nokia Inc.*, 625 F.3d 97, 113 (3d Cir. 2010) ("Section 1446(b) requires a defendant to file for removal within thirty days of receiving a copy of the pleading setting forth the removable claim.").

## IV. THIS COURT HAS ORIGINAL SUBJECT MATTER JURISDICTION

10. This Court has original diversity jurisdiction under CAFA. Subject to certain exceptions not applicable here, "CAFA confers on district courts 'original jurisdiction of any civil action' in which three requirements are met: (1) an alleged amount in controversy that exceeds $5,000,000, as aggregated across all individual claims; (2) minimally diverse parties; and (3) that the class consist of at least 100 or more members ('numerosity requirement')."

*Judon v. Travelers Prop. Cas. Co. of Am.*, 773 F.3d 495, 500 (3d Cir. 2014) (quoting and citing 28 U.S.C. § 1332(d)(2), (5)(B), (6)); *see also Hoffman v. Nutraceutical Corp.*, 563 F. App'x 183, 185 (3d Cir. 2014).  Taking these factors in reverse order, all of the requirements for CAFA jurisdiction are satisfied here.

> **A.** **The Putative Class Exceeds 100 Individuals.**

11.     To begin with, this Court has jurisdiction under CAFA because there are at least 100 putative class members.  28 U.S.C. § 1332(d)(5)(B).

12.     The statutes under which Plaintiffs seek relief—the PMWA and the PWPCL— provide for a limitations period of three years.  *E.g.*, *Cerutti v. Frito Lay, Inc.*, 777 F. Supp. 2d 920, 924 n.4 (W.D. Pa. 2011) (PMWA); *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963, 969 n.4 (Pa. Super. Ct. 2009) (PWPCL); *Harris v. Mercy Health Corp.*, No. CIV A. 97-7802, 2000 WL 1130098, at *5 (E.D. Pa. Aug. 9, 2000) ("The limitations period under the PMWA and the PWPCL is three years.").  Accordingly, based on the allegations of Plaintiffs' Complaint, it appears the putative class period dates back three years prior to the filing of the Complaint, to January 9, 2014.

13.     Plaintiffs' proposed class definition includes "[a]ll current and former employees" of Defendant who worked as "hourly paid Home Health Care Nurses" in Pennsylvania during the applicable limitations period.  (Compl. ¶ 27.)  According to Defendant's records, there appear to be approximately 3,671 employees who held the position of homecare LPN or RN during the putative class period.  (Budash Decl. ¶ 7.)

14.     Moreover, in their Complaint, Plaintiffs allege that "[t]he Class easily numbers over 100 members."  (Compl. ¶ 30.)

15.     Thus, CAFA's 100-member "numerosity" requirement is satisfied.

B. **Minimal Diversity of Citizenship Exists.**

16. To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—that is, that one putative class member is a citizen of a different state than the Defendant. 28 U.S.C. § 1332(d)(2); *Hoffman*, 563 F. App'x at 185 (noting CAFA's "minimal diversity" requirement, which was not at issue in the case); *Schwartz v. Comcast Corp.*, No. CIV.A. 05-2340, 2006 WL 487915, at *2 (E.D. Pa. Feb. 28, 2006) (finding minimal diversity met where "at least one class member [was] diverse from Comcast").

17. According to the allegations of the Complaint, Plaintiff Omorodion is a resident and citizen of the State of Nevada and Plaintiff Okoroji is a resident and citizen of the Commonwealth of Pennsylvania. (Compl. ¶¶ 1-2.)

18. In addition, according to the allegations of the Complaint, Defendant "is a Maryland corporation headquartered at 7227 Lee DeFosest [sic] Drive Columbia, Maryland 21046." (Compl. ¶ 3.) Thus, because Plaintiffs and Defendant are citizens of different states (Nevada and Pennsylvania versus Maryland), CAFA's minimal diversity requirement is satisfied.

C. **The Alleged Aggregate Amount in Controversy Exceeds $5,000,000.**

19. To ascertain the alleged amount in controversy for CAFA jurisdiction, the claims of the individual members in a putative class action are aggregated to determine if the alleged amount in controversy exceeds $5 million, exclusive of interests and costs. *See* 28 U.S.C. § 1332(d)(6).

20. As the Supreme Court has made clear, "a defendant's notice of removal need only include a *plausible allegation* that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (emphasis added). "By design," the Court explained, "§ 1446(a) tracks the general pleading requirement stated in Rule 8(a) of the Federal Rules of Civil Procedure." *Id.* at 553. Thus,

"when a defendant seeks federal-court adjudication, the defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Id.*; *see also Morgan v. Gay*, 471 F.3d 469, 474 (3d Cir. 2006) ("Because the complaint may be silent or ambiguous on one or more of the ingredients needed to calculate the amount in controversy, a defendant's notice of removal then serves the same function as the complaint would in a suit filed in federal court.") (internal quotation marks omitted).[1] Even when subsequently challenged through a motion to remand, in a case—as here—"where the plaintiff has not specifically averred in the complaint that the amount in controversy is less than the jurisdictional minimum," a plaintiff challenging the amount in controversy and seeking remand of a case removed based on diversity jurisdiction bears the heavy burden of proving "to a legal certainty that the plaintiff *cannot* recover the jurisdictional amount." *Frederico v. Home Depot*, 507 F.3d 188, 196 (3d Cir. 2007); *accord Hoffman*, 563 F. App'x at 185.

21. "In removal cases, determining the amount in controversy begins with a reading of the complaint filed in the state court." *Frederico*, 507 F.3d at 197 (quoting *Samuel-Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 398 (3d Cir. 2004)). That is, "to determine whether the CAFA jurisdictional requirements are satisfied, a court evaluates allegations in the complaint and a defendant's notice of removal." *Judon*, 773 F.3d at 500. In assessing whether federal jurisdiction exists for purposes of removal, "the district court must assume as true all factual allegations of the complaint." *Steel Valley Auth. v. Union Switch & Signal Div.*, 809 F.2d 1006, 1010 (3d Cir. 1987); *Smith v. Northland Grp., Inc.*, No. 3:13-CV-249, 2013 WL 1766775, at *1 (M.D. Pa. Apr. 24, 2013) ("Courts generally determine removal jurisdiction based on the

---

[1] Congress intended for federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." *See* S. Rep. 109-14, at 42 (2005).

pleading on the state court docket at the time of removal, assuming as true all factual allegations in the complaint[.]"); *Sportscare of Am., P.C. v. Multiplan, Inc.*, No. CIV.A. 10-4414 WJM, 2011 WL 223724, at *4 (D.N.J. Jan. 24, 2011) ("Defendants have a right to rely on the allegations of the complaint in removing a case, which are assumed as true for removal purposes."). Accordingly, for purposes of removal only, Defendant treats the allegations of Plaintiffs' Complaint as true and relies on those allegations in demonstrating that the amount allegedly placed in controversy by Plaintiffs' claims exceeds the jurisdictional threshold.

22. To be clear, Defendant denies the validity and merit of Plaintiffs' claims in their entirety, and Defendant expressly disputes that Plaintiffs (or the putative class members they purport to represent) are entitled to any of the monetary recovery or other relief they seek. Defendant also denies that Plaintiff's claims satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure and are certifiable as a class action. Nonetheless, for purposes of removal only, and without conceding that Plaintiffs or the putative class are entitled to any damages or penalties whatsoever—or that Plaintiffs' claims can be appropriately litigated on a class-wide basis under Rule 23 in the first place—it is evident that the aggregate value of the putative class members' claims exceeds CAFA's $5 million threshold, based on the allegations in Plaintiffs' Complaint.

23. As detailed above, Plaintiffs seek to recover damages related to allegedly unpaid "off the clock" working time, including both "straight time" and overtime pay. (*See supra* ¶ 6.) Specifically, Plaintiffs seek to recover overtime compensation under the PMWA (Count I), (Compl. ¶¶ 35-41), and both "straight time" and overtime compensation under the PWPCL (Count II), (*Id.* ¶¶ 42-50).

24. <u>Alleged Unpaid "Straight Time" Compensation Under the PWPCL</u>. In this case, the alleged amount in controversy for solely the "straight time" portion of Plaintiffs' PWPCL claim exceeds $5 million. In other words, even disregarding *all* of Plaintiffs' allegations concerning unpaid overtime compensation—and excluding *all* potential damages sought under the PMWA—Plaintiffs' stated amount in controversy exceeds $5 million.

25. Plaintiffs' Complaint alleges that Defendant failed to compensate Plaintiffs for myriad different types of "off the clock" work, including but not limited to the following: reviewing patients' medical histories, including prescribed drugs and treatment, which are presented in a "many-paged" email attachment that each nurse must review from his or her own home; performing research into any drug or treatment that a nurse is unfamiliar with; other pre-shift work, such as "review[ing] summaries about a patient's attitude and idiosyncrasies, the patient's family details, and other pertinent information regarding the patient and the relevant household"; coordinating care, making doctor's appointments, and following up on medication orders; driving to the Defendant's offices prior to starting a shift to pick up medical supplies; providing or receiving a detailed report from another caregiver during each shift change, which takes an average of fifteen minutes per shift; and traveling to Defendant's offices at the end of each week to drop off their paperwork. (Compl. ¶¶ 15-26.)

26. The Third Circuit has held that, for purposes of ascertaining diversity jurisdiction, estimates of the amount recoverable "should be 'objective and not based on fanciful, 'pie-in-the-sky,' or simply wishful amounts,'" but that such estimates "should also not be based on the 'low end of an open-ended claim[.]'" *Judon*, 773 F.3d at 507 (quoting *Werwinski v. Ford Motor Co.*, 286 F.3d 661, 666 (3d Cir. 2002)). Rather, a removing party's assumptions should be grounded in "a reasonable reading of the value of the rights being litigated." *Id.*

27.     Here, for purposes of removal only, taking the allegations in Plaintiffs' Complaint at face value, it is plausible to believe that Plaintiffs and putative class members allegedly worked "off-the-clock" an average of 1.25 hours per workweek (i.e., fifteen minutes per day, assuming a five-day workweek). This assumption is based on Plaintiffs' allegation that "Nurses are not compensated for approximately 15 minutes per shift" due to alleged "off-the-clock" time spent transferring information to other nurses at shift changes. (Compl. ¶¶ 23-25.)[2]

28.     In addition, according to the allegations in the Complaint, "Plaintiffs and similarly situated nurses are paid an hourly wage rate between $15 and $30 per hour. . . ." (Compl. ¶ 13.) Based on this allegation, it is plausible to assume that putative class members were paid an average hourly rate of $22.50 per hour (i.e., the average of $30.00/hour and $15.00/hour).

29.     Based on Plaintiffs' allegations regarding the amount of time they and putative class members worked off-the-clock—and Plaintiffs' allegations regarding the average hourly pay rate for putative class members—the Court can ascertain the total amount in controversy for the putative class by tabulating each putative class member's potential damages on a specific workweek basis. *See, e.g.*, *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013) ("[Section 1332(d)(6)] tells the District Court to determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [the] proposed class and determine whether the resulting sum exceeds $5 million. If so, there is jurisdiction and the court may proceed with the case.").

---

[2] This assumption is based on a very conservative reading of the Complaint for at least two reasons. First, some nurses work more than one shift per day or more than five shifts per workweek. Second, Plaintiffs' Complaint alleges that—aside from alleged off-the-clock work performed at shift changes—putative class members engaged in significant other off-the-clock work both before and after shifts. *See supra* at ¶ 3.

30.     Defendant's records indicate that the approximately 3,671 putative class members Plaintiffs seek to represent were collectively employed by Maxim for approximately 215,086.71 workweeks during the putative class period (from January 9, 2014 through approximately February 10, 2017). (Budash Decl. ¶ 8.) Taking Plaintiffs' alleged average compensation rate of $22.50 per hour and again presuming that the putative class members worked an average of 1.25 "off-the-clock" hours per workweek, this means that approximately **$6,049,314.00** is plausibly placed in controversy by Plaintiffs' "straight time" claim in Count II ($22.50 per hour x 1.25 hours per workweek x 215,086.71 workweeks = **$6,049,314.00**).

31.     In short, even disregarding Plaintiffs' allegations concerning unpaid overtime, the stated amount in controversy for Plaintiffs' PWPCL claim alone is approximately **$6,049,314.00**.

32.     <u>Alleged Liquidated Damages Under the PWPCL.</u>  In addition to seeking alleged unpaid compensation, Plaintiffs allege that Defendant "intentionally failed to pay the wages due as set forth in the preceding paragraphs of this Complaint to Plaintiffs and the Class, in violation of Pennsylvania Code, 43 P.S. § 260.3." (Compl. ¶ 46.)  Under the PWPCL, when wages are alleged to have been unjustly withheld, employees can recover liquidated damages in an amount equal to 25% of the total wages due or $500, "whichever is greater." 43 Pa. Cons. Stat. § 260.10; *see also Friedrich v. U.S. Computer Sys., Inc.*, No. CIV. A. 90-1615, 1995 WL 412385, at *4 (E.D. Pa. July 10, 1995); *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 961 (Pa. Super. Ct. 2011), *aff'd*, 106 A.3d 656 (Pa. 2014).  Here, Plaintiffs' Complaint expressly seeks "[l]iquidated damages . . . to the fullest extent permitted under the law[.]" (Compl., Prayer for Relief ¶¶ D(ii), G.)

33.     Taking Plaintiffs' allegations as true for purposes of removal only, to the extent Defendant failed to pay putative class members owed wages, Plaintiffs assert that such

nonpayment was "intentional" and would trigger liquidated damages under the PWPCL.  Under the PWPCL, the lowest amount of liquidated damages a putative class member could recover would be $500.  *See* 43 Pa. Cons. Stat. § 260.10 (authorizing liquidated damages in the amount 25% of the total wages due or $500, *whichever is greater*).  Applied across the approximately 3,671 putative class members, this means that Plaintiffs' claim under the PWPCL places at least **$1,835,500.00** in liquidated damages in controversy ($500 x 3,671 putative class members = **$1,835,500.00**).

34. Attorneys' Fees.  The Third Circuit has explained that courts "must also consider attorney's fees" in determining the amount in controversy for removal purposes, which "could be as much as thirty percent of the judgment." *Frederico*, 507 F.3d at 199 (citing *Suber v. Chrysler Corp.*, 104 F.3d 578, 585 (3d Cir. 1997); *In re Rite Aid Corp. Securities Litig.*, 396 F.3d 294, 303 (3d Cir. 2005)).  Though Maxim does not calculate a specific amount of potential attorneys' fees Plaintiffs could recover in this case, under Third Circuit precedent, the Court can and should take into consideration for amount-in-controversy purposes that, if successful, Plaintiffs may recover attorneys' fees that amount to (or exceed) "six figures." *Frederico*, 507 F.3d at 197, 199.

35. Summary.  For purposes of removal only, viewing Plaintiffs' claims collectively, and tabulating the potential amount in controversy for the entire putative class that Plaintiffs seek to represent, the Complaint and Plaintiffs' allegations therein demonstrate that the aggregate amount alleged to be in controversy in this case plausibly exceeds at least **$7,884,814.00**:

| **Alleged Claim** | **Alleged Amount in Controversy** |
|---|---|
| Unpaid "Straight Time" Wages (Count II) | approx. **$6,049,314.00** |
| Liquidated Damages (Count II) | approx. **$1,835,500.00** |
| **Total** | approx. **$7,884,814.00** |

36. Thus, this case amply satisfies CAFA's $5 million jurisdictional threshold, even before accounting for the potential recovery of attorneys' fees or any damages for Plaintiffs' overtime claims.[3]

**NOTICE TO PLAINTIFF AND COURT OF COMMON PLEAS**

37. Contemporaneously with the filing of this Notice of Removal, Defendant will provide notice to Plaintiffs through their attorneys of record, and Defendant will also file a copy of this Notice with the Philadelphia Court of Common Pleas, as required by 28 U.S.C. § 1446(d).

**WHEREFORE**, Defendant, desiring to remove this case to the United States District Court for the Eastern District of Pennsylvania, prays that the filing of this Notice of Removal shall effect the removal of this action to this Court.

---

[3] As made clear above, Defendant maintains that Plaintiffs' claims are wholly without merit and that Plaintiffs should not and will not recover any alleged damages, penalties, or liquidated damages whatsoever in this action—including but not limited to any overtime and unpaid wages alleged on behalf of themselves and/or any putative class members—and Defendant likewise reserves the right to respond to the Complaint and assert any applicable defenses at the appropriate time. At this juncture, Defendant treats Plaintiffs' allegations as true strictly for purposes of removal. *Steel Valley Auth.*, 809 F.2d at 1010. Moreover, even if the landscape of this case changes, those future developments would not impact the amount in controversy for purposes of determining whether the Court possesses jurisdiction under CAFA because the Court's inquiry "is limited to examining the case as of the time it was filed in state court." *Vodenichar v. Halcon Energy Props.*, 733 F.3d 497, 503 (3d Cir. 2013) (internal citation and quotation omitted). In particular, assuming that Plaintiffs fail to secure certification of the putative class under Rule 23—an outcome Defendant predicts will follow—that prospect should have no bearing on the Court's jurisdictional analysis. *See Hoffman*, 563 F. App'x at 186 ("A putative class action's prospects for certification are irrelevant to whether federal courts have subject matter jurisdiction over that action in the first instance.").

Dated:   February 15, 2017

*[signature: Sarah E. Bouchard]*

Sarah E. Bouchard (Pa. ID No. 77088)
sarah.bouchard@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1701 Market Street
Philadelphia, PA 19103
Tel:   (215) 963-5000
Fax:   (215) 963-5001

Lincoln O. Bisbee (*pro hac vice* application forthcoming)
lincoln.bisbee@morganlewis.com
MORGAN, LEWIS & BOCKIUS LLP
1111 Pennsylvania Avenue, NW
Washington, DC 20004
Tel:   (202) 739-3000
Fax:   (202) 739-3001

*Attorneys for Defendant*
*Maxim Healthcare Services, Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 15, 2017, a true and correct copy of the foregoing was served via electronic mail and Federal Express on the following individuals:

>Michael D. Shaffer
>Michael Gaier
>Shaffer & Gaier, LLC
>8 Penn Center, Suite 400
>1628 John F. Kennedy Boulevard
>Philadelphia, PA 19103
>Telephone: (215) 751-0100
>Facsimile: (215) 751-0723
>Email: mshaffer@shaffergaier.com


>Natalie Finkelman Bennett
>James C. Shah
>Shepherd Finkelman Miller & Shah, LLP
>35 East State Street
>Media, Pennsylvania 19063
>Telephone: (610) 891-9880
>Facsimile: (610) 891-9883
>Email: nfinkelman@sfmslaw.com
>  jshah@sfmslaw.com


>Ryan F. Stephan
>Catherine Mitchell
>STEPHAN ZOURAS, LLP
>205 North Michigan Avenue, Suite 2560
>Chicago, Illinois 60601
>Telephone: (312) 233 1550
>Facsimile: (312) 233 1560
>Email: rstephan@stephanzouras.com

>*Counsel for Plaintiffs*

_____
Sarah E. Bouchard